## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

TAMMY K. MITCHELL,
            Appellant,

      v.

DEPARTMENT OF VETERANS
     AFFAIRS,
            Agency.

DOCKET NUMBER
PH-1221-16-0139-W-5

DATE: April 12, 2024

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Tammy K. Mitchell</u>, Mullens, West Virginia, pro se.

<u>Matthew A. Kelly</u>, Esquire, Huntington, West Virginia, for the agency.

## BEFORE

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman

## FINAL ORDER

The appellant has filed a petition for review of the initial decision, which denied her request for corrective action in an individual right of action (IRA) appeal. Generally, we grant petitions such as this one only in the following circumstances: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. We AFFIRM the initial decision, except as expressly MODIFIED by this final order to clarify the administrative judge's analysis of the absence of evidence as to whether two employees similarly situated to the appellant were whistleblowers.

## BACKGROUND

The appellant was formerly employed as a Registered Nurse (RN) at the agency's Beckley Veterans Affairs Medical Center (VAMC). *Mitchell v. Department of Veterans Affairs*, MSPB Docket No. PH-1221-16-0139-W-1, Initial Appeal File (IAF), Tab 1 at 12. In January 2009, the appellant became the Home Based Primary Care (HBPC) Program Director and served in that position until August 2012, when she began taking leave for medical reasons. *Id.*; *Mitchell v. Department of Veterans Affairs*, MSPB Docket No. PH-1221-16-0139-W-5, Appeal File (W-5 AF), Tab 45, Hearing Compact Disc (HCD) 2 (testimony of the appellant). She remained on leave until her termination from the agency. IAF, Tab 1 at 25; HCD 2 (testimony of the appellant).

In August 2013, the appellant contacted the agency's Office of Inspector General (OIG) regarding allegations of wrongdoing at the agency. *Mitchell v. Department of Veterans Affairs*, MSPB Docket No. PH-1221-16-0139-W-4, Appeal File (W-4 AF), Tab 11 at 117. On September 5, 2014, the appellant sent

letters to Senator Joe Manchin and Congressman Nick Rahall alleging that 11 agency employees had committed acts of wrongdoing. IAF, Tab 1 at 11-28; W-4 AF, Tab 11 at 71-88. On September 8, 2014, Senator Manchin forwarded the appellant's letter to the agency's OIG, and on September 11, 2014, Congressman Rahall also sent her letter to the agency's OIG. IAF, Tab 1 at 10, W-4 AF, Tab 11 at 68-70. On October 29, 2015, the appellant sent letters to Senator Manchin, Congressman Evan Jenkins, and Senator Shelley Moore Capito, alleging that the agency's OIG had failed to investigate her allegations of wrongdoing and asking them to forward her September 5, 2014 letter to the Office of Special Counsel (OSC). W-5 AF, Tab 46.

On November 2, 2015, the agency terminated the appellant for failing to maintain an active, current, full, and unrestricted RN license. IAF, Tab 1 at 8-9, Tab 4 at 25-28. The appellant appealed her termination to the Acting Network Director of the agency's Capitol Health Care Network, who sustained the decision to terminate her on December 2, 2015. IAF, Tab 1 at 7, Tab 4 at 20. On December 10, 2015, the appellant filed a complaint with OSC's Disclosure Unit, which contained the same allegations of wrongdoing set forth in her September 5, 2014 letter, and on December 19, 2015, the appellant filed two complaints with OSC's Complaints Examining Unit alleging that agency officials had retaliated against her for reporting wrongdoing.[2] W-4 AF, Tab 11 at 91-170.

On January 5, 2016, the appellant filed a Board appeal challenging her termination and requested a hearing. IAF, Tab 1. At the appellant's request, the appeal was dismissed without prejudice for her to pursue her administrative remedies before OSC.[3] IAF, Tabs 6-7; *Mitchell v. Department of Veterans*

---

[2] After the filing of the appellant's OSC complaints, OSC reorganized its components such that the functions previously performed by the Complaints Examining Unit are now performed by the Investigation and Prosecution Division.

[3] It is undisputed that, as an RN appointed under 38 U.S.C. § 7401(1), the appellant does not have standing to appeal her termination directly to the Board. *See Hawker v. Department of Veterans Affairs*, 123 M.S.P.R. 62, ¶ 2 n.1 (2015) (observing that, as a physician appointed under 38 U.S.C. § 7401(1), the appellant could not directly appeal

*Affairs*, MSPB Docket No. PH-1221-16-0139-W-2, Appeal File (W-2 AF), Tabs 6-7. On November 18, 2016, OSC informed the appellant that it was closing its inquiry into her allegations and notified her of her right to seek corrective action from the Board. *Mitchell v. Department of Veterans Affairs*, MSPB Docket No. PH-1221-16-0139-W-3, Appeal File (W-3 AF), Tab 6 at 16-17. On February 6, 2017, the appellant refiled her Board appeal.[4] W-3 AF, Tab 1.

In October 2018, the administrative judge issued a decision limiting the claims over which the Board had jurisdiction. W-4 AF, Tab 26. The administrative judge found that the appellant had proven that she exhausted her administrative remedies before OSC and made nonfrivolous allegations that she made six disclosures of wrongdoing protected under 5 U.S.C. § 2302(b)(8) to Beckley VAMC management in 2011 and 2012 and made several protected disclosures in the September 5, 2014 letter she submitted to OSC, the agency's OIG, Congressman Rahall, and Senator Manchin. *Id*. at 5-8. The administrative judge also found that the appellant engaged in protected activity under 5 U.S.C. § 2302(b)(9)(C) by making disclosures to OSC and the agency's OIG. *Id*. at 7. According to the administrative judge, to the extent that the appellant argued that

---

his termination to the Board).

[4] The agency moved to dismiss the appellant's refiled appeal as untimely filed under the statutory deadline to file an IRA appeal. W-3 AF, Tab 7 at 4-5. We agree with the administrative judge that, although the appellant did not timely refile her appeal under the Board's regulations implementing the statutory deadline, because the appellant had already initiated an IRA appeal, the refiling deadline set forth under the initial administrative judge's prior initial decision applied, and that the appellant timely refiled her appeal under that deadline. W-4 AF, Tab 26 at 1-3. We also find that tolling the statutory time limit to file an IRA appeal is warranted in this case. *Heimberger v. Department of Commerce,* 121 M.S.P.R. 10, ¶ 10 (2014). Here, the appellant first attempted to refile her appeal on Monday, January 23, 2017, which was within the time period in which she could timely refile her appeal following OSC's termination of its investigation. W-3 AF, Tab 1 at 11-17. On January 26, 2017, the Northeastern Regional Office rejected the appeal because it incorrectly named OSC as the appellant's employing agency and provided the appellant with 10 days to refile her appeal. *Id*. at 8-10. On February 6, 2017, the appellant timely refiled her appeal. *Id*. at 1-7. Because the appellant filed a defective pleading within the statutory time period, we find that equitable tolling is warranted.

her alleged disclosures or activity were a contributing factor in an April 27, 2012 reprimand she received, the reprimand had been rescinded prior to the appellant filing her OSC complaint, and the issue was moot. *Id*. at 8-9. The administrative judge also found that the appellant did not make nonfrivolous allegations that her alleged disclosures in 2011 and 2012 were a contributing factor in her termination, but she nonfrivolously alleged that her disclosures to Congressman Rahall, Senator Manchin, the agency's OIG, and OSC were a contributing factor in her termination. *Id*. at 9-13. Accordingly, the administrative judge found that the Board had jurisdiction over these last four claims. *Id*. at 13.

After holding a 2-day hearing on the merits of the appellant's claims, the administrative judge issued an initial decision denying the appellant's request for corrective action. W-5 AF, Tab 51, Initial Decision (ID). The administrative judge incorporated his prior jurisdictional findings into his decision and found that the appellant was not alleging that her letters to Senator Capito and Congressman Jenkins contained protected disclosures. ID at 3-4, 6 n.8. The administrative judge then found that the appellant proved that her disclosures to the agency's OIG and to OSC constituted protected activity under 5 U.S.C. § 2302(b)(9). ID at 5-7. The administrative judge also found that the appellant proved that her letters to Senator Manchin and Congressman Rahall contained protected disclosures under 5 U.S.C. § 2302(b)(8) regarding the misuse of a government vehicle, the use of a government vehicle while impaired, the practice of maintaining a secret waiting list, and the ordering of services for a patient without rendering or confirming the diagnosis that warranted the service. ID at 7-11. The administrative judge found that the appellant's protected disclosures and activity occurred within 2 years of her termination. ID at 13. Next, the administrative judge found that the two Beckley VAMC agency officials involved in the decision to terminate the appellant, the former Director and the Nurse Executive, were not aware that the appellant had made disclosures to either

congressional members or OSC, and thus the appellant had not shown that those protected disclosures were a contributing factor in her termination. ID at 11-14.

However, the administrative judge found that the Director was aware of the appellant's 2012 disclosures regarding the HBPC program, which were similar to those under investigation by the agency's OIG as a result of the appellant's 2014 disclosures to the OIG, and that the appellant had made disclosures to the Nurse Executive that were the same as those under investigation by the OIG. ID at 14-15. Accordingly, the administrative judge found that it was more likely than not that the Nurse Executive was aware that the appellant was the source of the complaint that led to the OIG investigation, and that the Director at least suspected that the appellant was the source of the allegations that led to the OIG investigation. ID at 14-15. Additionally, the administrative judge found that, even if the Director was not aware that the appellant was the source of the disclosures to the agency's OIG, because of the Nurse Executive's involvement in the termination action, the Director could be deemed to have constructive knowledge of the appellant's protected activity. ID at 16. Accordingly, the administrative judge found that the appellant had proven that her OIG complaint was a contributing factor in the agency's decision to terminate her and had established her prima facie case of whistleblower reprisal. *Id*.

Next, the administrative judge concluded that the agency proved by clear and convincing evidence that it would have terminated the appellant in the absence of her protected activity. ID at 16-27. The administrative judge found that the agency presented strong evidence in support of its termination decision. ID at 17-19. The administrative judge found that the Director and Nurse Executive had some motive to retaliate against the appellant, but that it was not strong. ID at 20-21. Finally, the administrative judge found that, although the agency did not terminate two RNs whose licenses had lapsed, this treatment merited little weight. ID at 21-26. He found that, in the summer of 2015, the Director received notice confirming that anyone without an active license must be

terminated, and on July 1, 2015, a nationwide email was sent to human resources staff reminding them of the proper procedures to follow when a provider's license had lapsed, including mandatory removal for certain employees. ID at 24. He also found that, after the July 2015 email, all three individuals who were found to have allowed their RN license to lapse, including the appellant, were promptly removed from the agency. ID at 25-26. He found that the two individuals who were not terminated were not whistleblowers, and that no testimony reflected whether the other two individuals who were terminated were whistleblowers, so he assumed that they were not. ID at 24-26. Accordingly, he found that the disparate treatment of the two individuals prior to the July 2015 email should be afforded little weight, and that to the extent such treatment was significant, the disparate treatment was outweighed by evidence that the agency consistently treated employees situated similarly to the appellant the same after the July 2015 email. ID at 26. The administrative judge weighed the strength of the agency's evidence in support of the appellant's termination, the Director and Nurse Executive's motive to retaliate against the appellant, and the agency's treatment of those individuals similarly situated to the appellant, and found that the agency had proven by clear and convincing evidence that it would have terminated the appellant in the absence of her protected activity and denied her request for corrective action. ID at 26-27.

The appellant has filed a petition for review challenging the initial decision. *Mitchell v. Department of Veterans Affairs*, MSPB Docket No. PH-1221-16-0139-W-5, Petition for Review (PFR) File, Tab 2. The agency has filed an opposition to the petition, to which the appellant has filed a reply. PFR File, Tabs 4-5. As set forth below, we affirm the initial decision except as expressly MODIFIED by this final order to clarify the administrative judge's analysis of the absence of evidence as to whether two employees similarly situated to the appellant were whistleblowers.

**DISCUSSION OF ARGUMENTS ON REVIEW**

In order to establish a prima facie case of reprisal for whistleblowing under the Whistleblower Protection Enhancement Act of 2012 (WPEA), the appellant must prove by preponderant evidence that: (1) she made a disclosure protected under 5 U.S.C. § 2302(b)(8) or engaged in activity protected under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D); and (2) the protected disclosure or activity was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by 5 U.S.C. § 2302(a).[5]   5 U.S.C. § 1221(e)(1); *Webb v. Department of the Interior*, 122 M.S.P.R. 248, ¶ 6 (2015).   If the appellant makes out a prima facie case, then the agency is given an opportunity to prove, by clear and convincing evidence, that it would have taken the same personnel action in the absence of the protected disclosure or activity. 5 U.S.C. § 1221(e)(2); *Webb*, 122 M.S.P.R. 248, ¶ 6.

<u>The administrative judge correctly found that the appellant established a prima facie case of whistleblower reprisal.</u>

On review, the appellant challenges the testimony of the Director and Nurse Executive that they were not aware that she was the source of the disclosures investigated by the agency's OIG. PFR File, Tab 2 at 4-7. In support of her argument, she states that she explicitly named both officials in the disclosures she sent to Senator Manchin and Congressman Rahall, which were forwarded to the agency's OIG, and that she did not do so anonymously. *Id*. at 4-6. She also argues that the wrongdoing that she reported to Senator Manchin, Congressman Rahall, the agency's OIG, and OSC was the same wrongdoing that she reported to the Nurse Executive. *Id*. at 5. The appellant also states that, although her equal employment opportunity (EEO) and Office of Workers' Compensation Programs (OWCP) complaints are outside of the Board's jurisdiction, she named both the Director and Nurse Executive in the complaints.

---

[5] We have reviewed the relevant legislation modifying 5 U.S.C. § 2302 that was enacted during the pendency of this appeal and have concluded that it does not affect the outcome of the appeal.

*Id*. Next, she argues that the Director's testimony was not credible because she met with the appellant and her attorney in March 2015. *Id*. Finally, the appellant argues that she did not provide more evidence to support all of her allegations because the agency's OIG informed her that most of her evidence was "too old" and that they would not accept it. *Id*.

The administrative judge found that, although the Director and Nurse Executive testified that they were not aware that the appellant had made the disclosures under investigation by the agency's OIG, the Nurse Executive was aware that the appellant was the source of the disclosures due to the similarity of the disclosures to the appellant's past disclosures to the Nurse Executive. ID at 11-15. The administrative judge also found that the Director had constructive knowledge of the disclosure because the Nurse Executive influenced the Director's decision regarding the appellant's termination. ID at 16. Accordingly, the administrative judge concluded that the appellant met her burden to show that her disclosures to the OIG were a contributing factor in her termination. *Id*. In raising issues regarding the Director and Nurse Executive's knowledge of her disclosures, the appellant does not appear to challenge the administrative judge's finding that she established a prima facie case of whistleblower reprisal, nor does the agency challenge this finding. Accordingly, we do not find the appellant's arguments relevant to whether the administrative judge correctly found that she proved that her protected activity was a contributing factor in her termination and discern no reason to disturb the administrative judge's well-reasoned findings in this regard. *See Clay v. Department of the Army*, 123 M.S.P.R. 245, ¶ 6 (2016) (finding no reason to disturb the administrative judge's findings where she considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions on the issue of credibility); *Broughton v. Department of Health & Human Services*, 33 M.S.P.R. 357, 359 (1987) (same). As set forth below, we have considered the appellant's arguments to the extent they challenge

the administrative judge's findings regarding the strength of the Director's and Nurse Executive's motive to retaliate against her.

<u>The administrative judge correctly found that the agency demonstrated that it had strong evidence in support of its termination of the appellant.</u>

In determining whether an agency has shown by clear and convincing evidence that it would have taken the same personnel action in the absence of protected activity, the Board will consider the following factors: the strength of the agency's evidence in support of its action, the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision, and any evidence that the agency takes similar actions against employees who are not whistleblowers but are otherwise similarly situated. *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999). The Board does not view these factors as discrete elements, each of which the agency must prove by clear and convincing evidence, but rather weighs these factors together to determine whether the evidence is clear and convincing as a whole. *Lu v. Department of Homeland Security*, 122 M.S.P.R. 335, ¶ 7 (2015). In assessing whether the agency has met its burden by clear and convincing evidence, the Board must consider all the pertinent evidence in the record, and it must not exclude or ignore countervailing evidence by only looking at the evidence that supports the agency's position. *See Herman v. Department of Justice*, 119 M.S.P.R. 642, ¶ 15 (2013) (citing *Whitmore v. Department of Labor*, 680 F.3d 1353, 1367-70 (Fed. Cir. 2012)).

On review, the appellant renews her argument that her RN license never expired; rather, she requested that she be placed in an inactive status, and she understood her license to be full and unrestricted. PFR File, Tab 2 at 7. The administrative judge acknowledged the appellant's arguments but concluded that the appellant's license was not active as of November 1, 2015, and that the appellant thus did not meet the qualification standards required for her position at the time of her termination. ID at 17-19. We agree that the agency's evidence in

support of the appellant's termination for failure to maintain an active, current, full, and unrestricted license as an RN was strong. In terminating the appellant, the agency alleged that, at midnight on October 31, 2015, her RN license expired. IAF, Tab 4 at 27-28. In support of its action, the agency provided a November 2, 2015 printout from the West Virginia Board of Examiners for Registered Professional Nurses website, which stated that the appellant's license had expired on October 31, 2015, and its status was inactive. *Id*. at 30. The agency also provided a copy of a West Virginia statute that provides that an individual desiring to temporarily retire from practice may request to be placed on the inactive list, but that they may not practice in the state, and "[w]hen the person desires to resume active practice," they must remit an application for renewal and payment. W-3 AF, Tab 7 at 50. The agency's handbook dictates that, as a condition of employment, an RN must have a "current, full, active and unrestricted registration as a graduate professional nurse in a State[.]" IAF, Tab 4 at 37. Although the appellant has asserted that she understood from the West Virginia Board of Examiners that going into an inactive status still meant that her license was full and unrestricted, she has not provided any evidence that, under West Virginia law, an inactive license meets the requirements of a "current, full, active and unrestricted" license as required by agency policy, nor does the evidentiary record support this contention. *See* HCD 2 (testimony of the appellant). Accordingly, the administrative judge properly found that the agency's evidence in support of its termination action was strong.

The administrative judge properly found that, although the agency officials involved in the appellant's termination had some motive to retaliate against her, the motive was not strong.

On review, the appellant renews her arguments that the Nurse Executive and Director were motivated to retaliate against her. PFR File, Tab 2 at 8. As set forth above, we have also considered the appellant's arguments that the Nurse Executive and Director were directly aware that she was the source of the

disclosures underlying the OIG's investigation to the extent that their direct knowledge of her disclosures strengthens their motive to retaliate against her. *Id.* at 4-7. As discussed above, the administrative judge found that, although the Nurse Executive and Director testified that they were not aware that the appellant had made the disclosures under investigation by the agency's OIG, it was more likely than not that the Nurse Executive was aware that the appellant was the source of the allegations underlying the OIG investigation preceding the appellant's termination because, in 2012, the appellant made disclosures to the Nurse Executive that were the same as those under investigation. ID at 11-15. The administrative judge also found that the Director may have suspected that the appellant was the source of the allegations underlying the OIG investigation because she was aware of matters addressed in an earlier OIG report stemming from similar disclosures from the appellant. ID at 15. The administrative judge's findings reflect that the Nurse Executive and Director could have deduced the appellant's involvement in the agency's OIG investigation from the similarity of her prior allegations to those under investigation by the OIG.

While the Nurse Executive and Director could have deduced the appellant's involvement in the OIG investigation, the administrative judge did not find, nor do the appellant's arguments establish, that the Nurse Executive and Director learned through other channels that the appellant was the source of the disclosures underlying the OIG investigation. For example, although the appellant alleges that she was not anonymous in reporting to two members of Congress, who forwarded her complaints to the agency's OIG, there is no evidence that the Nurse Executive or Director reviewed the appellant's complaints or that the members of Congress or the OIG disclosed her name to the Nurse Executive or Director. PFR File, Tab 2 at 4-6. Thus, there is no evidence that the Nurse Executive and Director received clear and direct information that the appellant made a protected disclosure or engaged in protected activity in 2014.

The appellant also alleges that the Nurse Executive and Director were aware of her EEO and OWCP complaints, but the appellant has conceded that her EEO and OWCP complaints do not constitute protected activity under the WPEA. PFR File, Tab 2 at 5; *see* 5 U.S.C. §§ 1221(a), 2302(b)(9)(A)(ii) (excluding the exercise of any appeal, complaint, or grievance right other than with regard to remedying a violation of 5 U.S.C. § 2302(b)(8) from the Board's jurisdiction under the WPEA); *Edwards v. Department of Labor*, 2022 MSPB 9, ¶¶ 18-21 (holding that title VII-related claims are excluded from protections under the whistleblower protection statutes); *see also Young v. Merit Systems Protection Board*, 961 F.3d 1323, 1329 (Fed. Cir. 2020) (stating that allegations of retaliation for exercising a title VII right do not fall within the scope of section 2302(b)(8)). Accordingly, whether the Nurse Executive and Director were named in the appellant's EEO and OWCP complaints is not relevant to whether they were aware of her protected disclosures or activity under the WPEA. Similarly, the appellant refers to a March 2015 mediation between the appellant and the agency that the Director attended; however, there is no evidence that it pertained to her protected activity in this appeal. W-5 AF, Tab 16 at 18-19; PFR File, Tab 2 at 5.

The appellant further argues that the Nurse Executive was aware of her 2012 disclosures. PFR File, Tab 2 at 5, 8. The administrative judge took this fact into account but concluded that the Nurse Executive's motive to retaliate was not particularly strong. ID at 20-21. The administrative judge did not explicitly address whether the Nurse Executive's testimony that she was unaware of the appellant's disclosures to the agency's OIG conflicted with his finding that it was more likely than not that, due to the similarity of the appellant's disclosures to her in 2012, the Nurse Executive was aware that the appellant was the source of the allegations underlying the OIG investigation and thus rendered the Nurse Executive's testimony less credible as to her motive to retaliate. However, a witness who is not credible about one matter may be credible about another

matter. *Mitchell v. Department of the Air Force*, 91 M.S.P.R. 201, ¶ 10 (2002). As discussed below, after an opportunity to observe the Nurse Executive's demeanor, the administrative judge nevertheless found that her motive to retaliate against the appellant was not strong.

The administrative judge considered that both the Nurse Executive and Director were named in the appellant's disclosures to the OIG and that the appellant's allegations would have reflected poorly on the Director and other Beckley VAMC managers. ID at 20. However, after an opportunity to assess both agency officials' testimony, the administrative judge found that there was no evidence that either the Nurse Executive or Director expressed animus against the appellant. ID at 20-21. He found particularly credible the Director's testimony that she would not retaliate against a whistleblower and supported mechanisms for employees to report issues to agency leadership. ID at 20-21. The Board defers to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on the observation of the demeanor of witnesses testifying at a hearing. *Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002). Although the Board may decline to defer to an administrative judge's credibility findings that are abbreviated, based on improper considerations, or unsupported by the record, *Redschlag v. Department of the Army*, 89 M.S.P.R. 589, ¶ 13 (2001), it will not overturn an administrative judge's demeanor-based credibility findings merely because it disagrees with those findings, *Purifoy v. Department of Veterans Affairs*, 838 F.3d 1367, 1372 (Fed. Cir. 2016) (quoting *Haebe*, 288 F.3d at 1299). We find that the administrative judge's demeanor-based credibility findings regarding the Director's lack of a motive to retaliate are supported by the record and afford them deference. Similarly, we find no error in the administrative judge's conclusion that the Nurse Executive had not expressed animus towards the appellant and that there was no evidence that she had a strong motive to retaliate against the appellant. ID at 20-21.

<u>The appellant has not shown error in the weight the administrative judge afforded the agency's treatment of two nurses whose licenses had lapsed prior to the appellant's termination.</u>

On review, the appellant challenges the administrative judge's finding that, while two nurses were not terminated for lapsed licenses, that evidence should be afforded little weight in assessing whether the agency would have terminated the appellant in the absence of her protected activity. ID at 21-26. She argues that there was no agency OIG report from the summer of 2015 discussing the licensing issue to substantiate agency officials' representations that the OIG told them they needed to remove nurses without an active license. PFR File, Tab 2 at 9. She also alleges that the email the agency submitted in support of its reaffirmation of the policy was not presented in its entirety. *Id*. The record includes a complete copy of a July 1, 2015 email in which a human resources team leader informed the agency's human resources staff nationwide that the agency's OIG was going to conduct reviews of the methods used by medical centers to track licensure and actions taken when an employee does not have an active, full, and unrestricted license. IAF, Tab 4 at 32-33. The team leader also set forth the procedures to be followed if an employee failed to maintain at least one active, current, and unrestricted license if licensure is a condition of employment. *Id*.

The appellant is correct that the agency did not submit any documentation from the OIG confirming that it investigated the issue in the summer of 2015; however, the Director testified that, in the summer of 2015, she received notification that the OIG was investigating nurse licensing and that removal of those without active licenses was mandatory; the July 1, 2015 email corroborates this testimony. IAF, Tab 4 at 32-33; W-5 AF, Tab 44, HCD 1 (testimony of the Director). The record supports the administrative judge's finding that Beckley VAMC's leadership adhered to agency policy after July 1, 2015, and that the

agency's actions regarding lapsed licenses prior to that date should be afforded less weight than those after that date. ID at 25-26.

The appellant also asserts that she was treated differently from other employees whose licenses were in danger of lapsing, as others were provided with reminders and a proposal to terminate them, but she was not. PFR File, Tab 2 at 7-8. She further argues that, because she was on medical leave, and her duties did not consist of seeing patients, she could have performed her duties with an inactive license, whereas those nurses who were not terminated for lapsed licenses had duties that included seeing patients. *Id*. at 9. The record reflects that one RN, B.W., received a telephone call regarding her lapsed license, as well as a December 2012 notice and an opportunity to respond to a proposal to issue her an admonishment, which was issued in January 2013. W-3 AF, Tab 27 at 23-26; HCD 1 (testimony of B.W). Additionally, another nurse, S.H., was called into a meeting in early November 2014 regarding her lapsed RN license, and she renewed it and was not disciplined. HCD 3 (testimony of S.H.). As discussed above, we find no error in the administrative judge's decision to afford the agency's disciplinary actions regarding lapsed licenses prior to July 2015, including those regarding B.W. and S.H., less weight than those that occurred after July 2015. ID at 25-26. The record otherwise reflects that the Dependent Credentialing Coordinator sent reminders to the work emails of nurses who had not yet renewed their licenses; the appellant has not asserted that reminders were not sent to her work email, and, as observed by the administrative judge, there is no evidence that the agency was obligated to notify her through alternative measures while she was on leave. HCD 1 (testimony of the Dependent Credentialing Coordinator), ID at 18-19. Finally, the appellant has set forth no evidence that her duties were relevant to the issue of whether she must be terminated for failure to maintain an active license, nor do we find any. *See* IAF, Tab 4 at 35-37.

<u>The initial decision is modified to reflect that, in the absence of evidence that the two nurses terminated after the appellant's termination were not whistleblowers, the third *Carr* factor cuts slightly against the agency.</u>

In analyzing the third *Carr* factor, the administrative judge stated that, in the absence of evidence that the two RNs terminated after the appellant's termination for lapsed licenses had engaged in whistleblowing activity, he assumed that both nurses were non-whistleblowers. ID at 25-26. The administrative judge correctly observed that the record is devoid of evidence as to whether the two nurses terminated after the appellant were whistleblowers. Our reviewing court has held that "the absence of any evidence relating to *Carr* factor three can effectively remove that factor from the analysis," but that the failure to produce such evidence if it exists "may be at the agency's peril," and may cause the agency to fail to meet its clear and convincing burden. *Miller v. Department of Justice*, 842 F.3d 1252, 1262 (Fed. Cir. 2016) (quoting *Whitmore*, 680 F.3d at 1374). Moreover, because it is the agency's burden of proof, when the agency fails to fully develop the record with evidence that similarly situated non-whistleblowers are treated the same as whistleblowers like the appellant, the third *Carr* factor cannot weigh in favor of the agency. *Smith v. General Services Administration*, 930 F.3d 1359, 1367 (Fed. Cir. 2019); *Siler v. Environmental Protection Agency*, 908 F.3d 1291, 1299 (Fed. Cir. 2018).

Here, in the absence of any evidence from the agency regarding the status of the two nurses terminated after the appellant's termination, the administrative judge improperly assumed that they were not whistleblowers. ID at 25-26; *cf. Miller*, 842 F.3d at 1262 (stating that, in the absence of evidence that the agency's treatment of the appellant is comparable to similarly situated employees who are not whistleblowers, "the court may not simply guess what might happen absent whistleblowing. The burden lies with the Government."). Accordingly, the termination of these two nurses cannot be considered as evidence that the

agency treated similarly situated non-whistleblowers the same as whistleblowers like the appellant.

As set forth above, we discern no error in the administrative judge's determination that the agency's failure to terminate two RNs who were not whistleblowers should be afforded less weight because the Beckley VAMC had inconsistently adhered to its policy prior to the July 2015 reaffirmation of the policy mandating removal of nurses with lapsed licenses, but the Beckley VAMC consistently adhered to the policy after July 2015 by promptly removing all nurses with a lapsed license. However, in the absence of any evidence that non-whistleblowers similarly situated to the appellant were terminated, we conclude that the absence of such evidence on the third *Carr* factor cuts "slightly against" the agency. *Cf. Miller*, 842 F.3d at 1262 (reaching the same conclusion where the agency produced evidence that there were no similarly situated non-whistleblowers under the allegedly retaliatory official, but did not present evidence as to agency practices more broadly).

We have reweighed the *Carr* factors and nevertheless conclude that the strength of the agency's evidence in support of removing the appellant, an RN who had allowed her license to become inactive, is strong against relatively weak evidence of an agency motive to retaliate and insubstantial evidence that non-whistleblowers were treated differently than the appellant. *See Whitmore*, 680 F.3d at 1368 ("Evidence only clearly and convincingly supports a conclusion when it does so in the aggregate considering all the pertinent evidence in the record, and despite the evidence that fairly detracts from that conclusion."). Accordingly, the agency proved by clear and convincing evidence that it would have terminated the appellant in the absence of her protected activity.

The appellant has not shown that the administrative judge's rulings regarding witnesses were prejudicial to her appeal.

On review, the appellant argues that the agency omitted information when it provided her with a 2015 report of nurses with lapsed licenses because one

nurse, S.H., was not listed in the report. PFR File, Tab 2 at 7. She further argues that the agency deceived the administrative judge when it represented that S.H.'s Nurse Practitioner license had expired, rather than her RN license, and the administrative judge did not approve S.H. as one of the appellant's witnesses until she submitted evidence that S.H.'s RN license had expired. *Id.* The record reflects that the administrative judge initially did not approve the appellant's request to call S.H. as a witness because she was not similarly situated to the appellant, as she was not an RN who had a period without a license. W-5 AF, Tab 19 at 4-5. However, the appellant submitted a communication with S.H. in which S.H. stated that her RN license had lapsed. W-5 AF, Tab 21 at 12. The administrative judge subsequently approved S.H. as a witness for the appellant, and S.H. testified at the hearing. W-5 AF, Tab 24, Tab 49, HCD 3 (testimony of S.H.). The appellant does not identify how the delay in securing S.H. as a witness affected the outcome of this matter, nor do we find any evidence that the delay harmed the appellant.

The appellant also argues that the administrative judge erred in preventing a second nurse, A.W., from testifying because the agency led the administrative judge to believe that A.W. was a Licensed Nurse Practitioner; once the appellant learned that A.W. was on the 2014 lapsed RN license list, it was too late to call her as a witness. PFR File, Tab 2 at 7. The administrative judge did not approve the appellant's request to call A.W. as a witness because the appellant did not show that A.W.'s testimony was relevant to the issues in the appeal. W-5 AF, Tab 19 at 4. An administrative judge has wide discretion to exclude witnesses where it has not been shown that their testimony would be relevant, material, and nonrepetitious. *Fox v. Department of the Army*, 120 M.S.P.R. 529, ¶ 42 (2014). The record reflects that, approximately 20 months prior to the hearing, the agency provided records to the appellant showing that A.W. was terminated on November 4, 2014, for failure to maintain an active, current, full, and unrestricted license as an RN. W-3 AF, Tab 27 at 6, 18-20. Accordingly, the appellant has

not identified any misrepresentation on the part of the agency that affected the instant proceedings.

Although the appellant has not identified why A.W.'s testimony was relevant, material, and nonrepetitious, the appellant's prehearing submission reflects that she expected A.W. to testify that she received an opportunity to provide a response to her notice of termination. W-5 AF, Tab 16 at 10. The administrative judge did not identify the specific reason he denied the appellant's request to call A.W. Although A.W.'s testimony could have been relevant to disparate treatment between the appellant and other RNs whose licenses lapsed, we find that her testimony would have been unlikely to change the outcome in this case. The administrative judge afforded adverse actions for lapsed licenses prior to July 2015 less weight because they occurred prior to a tightening of Beckley VAMC's adherence to agency policy regarding lapsed licenses, and he would likely have afforded A.W.'s November 2014 termination similar weight. W-3 AF, Tab 27 at 18; ID at 25-26. Accordingly, any error in denying A.W. as a witness was not prejudicial to the appellant. *See Panter v. Department of the Air Force*, 22 M.S.P.R. 281, 282 (1984) (holding that an adjudicatory error that is not prejudicial to a party's substantive rights provides no basis for reversal of an initial decision).

The appellant also asserts that the administrative judge denied her the opportunity to obtain an affidavit from the former Chief of Staff of Beckley VAMC. PFR File, Tab 2 at 9. The administrative judge approved the Chief of Staff as a witness for the appellant. W-5 AF, Tab 19 at 4. The appellant later filed a request to allow the Chief of Staff to submit an affidavit, as he had relocated and was unable to attend the hearing; the agency objected to this request. W-5 AF, Tab 31 at 3, Tab 32. The administrative judge denied the appellant's request on the grounds that the submission of an affidavit would not allow for cross-examination of the witness, and the parties had not explored other means of presenting him as a witness that allowed for cross-examination.

W-5 AF, Tab 33. The administrative judge directed the appellant to make the Chief of Staff available to testify by telephone; otherwise, his statement would not be considered. W-5 AF, Tab 33 at 2, Tab 37 at 2. The appellant subsequently informed the administrative judge that the Chief of Staff had declined to testify. W-5 AF, Tab 39 at 3.

It was not improper for the administrative judge to direct the appellant to secure the witness' testimony by telephone prior to approving her request to provide an affidavit. However, the administrative judge incorrectly informed the appellant that, if the witness was not available by telephone, a statement from the witness would not be considered. It is well-settled that relevant hearsay is admissible in Board proceedings. *Shannon v. Department of Veterans Affairs*, 121 M.S.P.R. 221, ¶ 15 (2014); *Borninkhof v. Department of Justice*, 5 M.S.P.R. 77, 83 (1981). An administrative judge is to assess the probative value of admitted hearsay evidence under the circumstances of each case, in accordance with the factors set forth in *Borninkhof v. Department of Justice*.[6] *Shannon*, 121 M.S.P.R. 221, ¶ 15; *Borninkhof*, 5 M.S.P.R. at 87. Given that the administrative judge had approved the witness' testimony as relevant to the instant proceedings, the administrative judge should have allowed the submission of an affidavit from the witness and considered its probative value.

Even if the administrative judge's ruling was in error, the appellant has not shown that the error was prejudicial. The appellant has not shown that the Chief of Staff was not available to testify; rather, her subsequent pleadings reflected

---

[6] Under *Borninkhof*, the following factors affect the weight to be accorded hearsay evidence: (1) the availability of persons with firsthand knowledge to testify at the hearing; (2) whether the statements of the out-of-court declarants were signed or in affidavit form, and whether anyone witnessed the signing; (3) the party's explanation for failing to obtain signed or sworn statements; (4) whether declarants were disinterested witnesses to the events, and whether the statements were routinely made; (5) the consistency of the declarants' accounts with other information in the case, internal consistency, and their consistency with each other; (6) whether corroboration for statements can otherwise be found in the agency record; (7) the absence of contradictory evidence; and (8) the credibility of the declarant when he made the statement attributed to him. *Borninkhof*, 5 M.S.P.R. at 87.

that he ultimately declined to testify, and the appellant did not secure his testimony through a subpoena.[7] W-5 AF, Tab 39 at 3. Consistent with the factors for assessing the probative value of hearsay evidence, the administrative judge likely would have afforded any affidavit less weight than live testimony. *See Borninkhof*, 5 M.S.P.R. at 87 (considering the availability of persons with firsthand knowledge to testify in assessing the weight to be given hearsay evidence). Additionally, the appellant provided little detail as to the Chief of Staff's testimony and how it would have affected the outcome of her appeal. Her prehearing submissions reflected that she expected the Chief of Staff to testify regarding his meetings with the appellant and the Nurse Executive regarding the appellant's protected disclosures; however, it is not necessary for us to consider the extent to which his testimony was necessary to establish that the appellant's disclosures to the Nurse Executive occurred, as the administrative judge found that the appellant established a prima facie case of whistleblower reprisal. W-5 AF, Tab 16 at 8. The Chief of Staff's testimony is unlikely to have substantially affected the weight the administrative judge afforded the second *Carr* factor, as his testimony would have pertained to the appellant's disclosures in 2011 and 2012 and would not have established that the Nurse Executive or Director had direct knowledge of the appellant's 2014 disclosures to the agency's OIG. W-4 AF, Tab 20 at 9-30. Finally, the appellant has indicated that the Chief of Staff was terminated or transferred from the Beckley VAMC, but she has provided insufficient information as to the circumstances to consider whether that fact is relevant to the instant case. W-5 AF, Tab 16 at 8. Accordingly, the appellant has not shown that she was prejudiced by the administrative judge's ruling. *Panter*, 22 M.S.P.R. at 282. As such, we affirm the initial decision denying the appellant's request for corrective action except as modified herein.

---

[7] The appellant has not explained why she did not seek a subpoena.

## NOTICE OF APPEAL RIGHTS[8]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

---

[8] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any

requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's

disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[9]  The court of appeals must <u>receive</u> your petition for review within **60 days** of <u>the date of issuance</u> of this decision.  5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

---

[9] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:      *Gina K. Grippando*

     _____

     Gina K. Grippando

     Clerk of the Board

Washington, D.C.